# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 28, 2000 Session

## MICHAEL TODD DRINNON v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Hamblen County**
**No. 96-CR-037 (Trial)       James Edward Beckner, Judge**
**No. 99-CR-037 (Post-Conviction)      Ben K. Wexler, Judge**

---

**No. E1999-2001-CCA-R3-PC (Post-Conviction)**
**October 6, 2000**

---

The petitioner, Michael Todd Drinnon, was convicted in the Hamblen County Criminal Court on two counts of evading arrest, a class E felony, and two counts of driving on a revoked license, third offense, a class A misdemeanor. The trial court sentenced the petitioner to eleven months and twenty-nine days incarceration in the county jail for the driving on a revoked license convictions. The trial court also sentenced the petitioner to two years incarceration in the Tennessee Department of Correction for the evading arrest convictions. The trial court further ordered that the petitioner's sentences for driving on a revoked license be served concurrently with the sentences for evading arrest, which were to be served consecutively, for an effective sentence of four years. Initially, the petitioner appealed his conviction on the basis of sufficiency of the evidence. However, the trial exhibits were not included in the record on direct appeal. As a result, this court was precluded from deciding the sufficiency of the evidence. Subsequently, the petitioner filed a petition for post-conviction relief, claiming that, through no fault of the petitioner, the Hamblen County Court Clerk failed to include the exhibits in his first appeal; therefore, he should receive a delayed appeal on the issue of sufficiency of the evidence. The petitioner also argued that his trial counsel was ineffective in his representation of the petitioner. The post-conviction court dismissed the petitioner's petition for post-conviction relief, finding that the petitioner had received effective assistance of counsel. However, the post-conviction court did grant the petitioner a delayed appeal on the issue of sufficiency of the evidence. Therefore, the petitioner presents the following issues for our review: (1) whether the evidence presented at petitioner's original trial was insufficient to support a verdict of guilt, and (2) whether petitioner's trial counsel was effective in his representation of the petitioner. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES, and JAMES CURWOOD WITT, JR., J.J., joined.

J. Russell Pryor, Greenville, Tennessee, D. Clifton Barnes, Morristown, Tennessee, for the appellant, Michael Todd Drinnon.

Paul G. Summers, Attorney General and Reporter, John Knox Walkup, Attorney General and Reporter, Clinton J. Morgan, Counsel for the State, Elizabeth B. Marney, Assistant Attorney General, John Dugger, Assistant District Attorney General, Victor Vaughn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background
#### A. Trial

The petitioner's convictions arose out of two separate incidents. On June 16, 1996, Officer Bob Ellis observed an individual, driving a white Suzuki motorcycle with a bent left tail light, run a stop sign. The driver had long brownish-blond hair showing from beneath a striped helmet and he was wearing a purple tank top and blue jean cut-off shorts. Officer Ellis pursued the individual and attempted to stop him. The motorcyclist made several turns in traffic and the officer discontinued pursuit.

On June 22, 1996, Officer Ellis again observed an individual, sitting at a red light riding the same style motorcycle with a bent tail light, wearing the same style helmet, and having the same style hair and build as the June 16th perpetrator. The driver of the motorcycle was wearing cut-off blue jean shorts, with a pepper spray canister attached at the belt, and sandals. The driver was not wearing a shirt, and Officer Ellis observed three tattoos on the driver's back. The driver had a tattoo near his right shoulder, a tattoo of an eagle near the center of his back, and a small tattoo on the left side of his lower back. Officer Ellis turned on his blue lights in an attempt to stop the individual for questioning about the June 16th episode. The motorcyclist once again made several turns to evade the police, passing a vehicle on a double yellow line. Officer Ellis discontinued pursuit because of safety concerns.

Officer Ellis made a videotape of the June 22nd chase. Hamblen police officers watched the tape and were told to be on the lookout for the driver of the motorcycle. On June 26, 1996, Officer Lynn Bales spotted the petitioner in the parking lot of Hawk's Pool Hall. The petitioner was working on a motorcycle that was the same color and make as the one the police were seeking, and it also had a bent tail light. Officer Bales asked the petitioner who owned the motorcycle. The petitioner responded that the motorcycle was his. Subsequently, Officer Bales notified Officer Ellis of the petitioner's location.

Shortly thereafter, Officer Ellis came to Hawk's to talk to the petitioner. The petitioner was wearing a cut-off orange shirt, blue jean shorts with a canister of pepper spray on the belt, and sandals. Additionally, the petitioner had long brownish-blond hair and was the same size and build as the perpetrator of the June 16th and June 22nd offenses. Officer Ellis noticed that the helmet near the motorcycle had been spray painted white. Nevertheless, Officer Ellis could still see the outline of stripes underneath the paint on the helmet and noted that they were similar to the stripes he had previously observed on the perpetrator's helmet. Officer Ellis asked the petitioner to

-2-

show the officers his back. The petitioner complied. On the petitioner's back were three tattoos: a wizard tattoo near his right shoulder, a large eagle tattoo in the center of his back, and a small mouse tattoo on the left side of his lower back. Based upon the foregoing, Officer Ellis arrested the petitioner for evading arrest. After investigating the petitioner's driving history, the State also charged the petitioner for driving on a revoked license.

At trial, the State produced the testimony of Officer Ellis regarding his identification of the petitioner as the driver of the motorcycle on June 16th and June 22nd. However, the petitioner produced evidence to suggest that he was not the driver of the motorcycle on the days in question. Tony Kitts testified for the petitioner that he had driven the motorcycle some time in late June, but he was unsure of the date. Kitts also admitted to having eagle and mouse tattoos, known as the "ultimate act of defiance," in roughly the same locations on his back. However, Kitts did not have a third tattoo near his right shoulder. Moreover, when Kitts was asked at trial if he had evaded the police while riding the motorcycle, Kitts responded that he had not.

Additionally, the petitioner's brother, Chad Franklin Seals, testified for the defense at trial. Seals claimed that he owned the motorcycle. Furthermore, Seals stated that, since he had bought the motorcycle, he had not allowed his brother to drive it. Seals maintained that the only reason the petitioner was in possession of the motorcycle on June 26th was because it had quit running at Hawk's and Seals asked the petitioner to fix it. Seals testified that Kitts had been riding his motorcycle on the 22nd of June; however, he did not claim that Kitts had ridden the motorcycle on June 16th.

The jury convicted the petitioner of two counts of evading arrest, a class E felony, and two counts of driving on a revoked license, third offense, a class A misdemeanor. The trial court sentenced the petitioner to eleven months and twenty-nine days incarceration in the county jail for the driving on a revoked license convictions. Additionally, the trial court sentenced the petitioner to two years incarceration for the evading arrest convictions. The trial court further ordered that the petitioner's sentences for driving on a revoked license be served concurrently with the evading arrest convictions, which were to be served consecutively, for an effective sentence of four years.

### B. Post-Conviction
Initially, the petitioner appealed his conviction to this court on direct appeal averring that the State produced insufficient evidence to convict him at trial. However, the trial exhibits were not transferred to this court on appeal. Therefore, this court was precluded from deciding this issue. State v. Drinnon, No. 03C01-9708-CR-00347, 1998 WL 473896, at *1(Tenn. Crim. App. at Knoxville, August 14, 1998).

Subsequently, the petitioner filed a petition for post-conviction relief, claiming that, through no fault of the petitioner, the Hamblen County Court Clerk failed to include the exhibits in his first appeal; therefore he deserved a delayed appeal on the issue of the sufficiency of the evidence used to convict him at trial. The petitioner further claimed that his trial counsel had been ineffective in his representation of the petitioner. The petitioner alleged that his trial counsel did not call

potential alibi witnesses, did not call a tattoo expert who would have testified that the petitioner was not the driver shown on the police videotape, and did not ask Seals to testify concerning drive-out tags which would have proved Seals' ownership of the motorcycle. The post-conviction court granted the petitioner a delayed appeal to this court on the issue of sufficiency of the evidence. However, the post-conviction court dismissed the remainder of petitioner's claims, finding that the petitioner had received effective assistance of counsel.

## II. Analysis

The petitioner claims that he should be granted post-conviction relief in the form of a new trial, because of ineffective assistance of counsel, and also relief in the form of a delayed appeal, on the issue of sufficiency of the evidence. The petitioner's delayed appeal, which was granted by the post-conviction court, takes the place of his direct appeal, with the same rights attaching. Cole v. State, No. 01C01-9509-CC-00294, 1998 WL 240336, at *2, (Tenn. Crim. App. at Nashville, May 14, 1998) perm. app. denied (Tenn. 1998). Furthermore, "a petition for post-conviction relief, complaining of the original conviction and sentence, may not be maintained while a direct appeal of the same conviction and sentence is being prosecuted." Gibson v. State, 7 S.W.3d 47, 49 (Tenn. Crim. App. 1998).

Initially, we note that all of the petitioner's potential claims for post-conviction relief will not be apparent until the conclusion of his delayed appeal. Therefore, "[b]ecause a post-conviction petition may not be filed until the final judgment of the highest court has been entered, the instant petition for post-conviction relief was filed prematurely and should have been dismissed accordingly." Id.(citations omitted). Otherwise, the trial court and intermediate appellate court may potentially waste their time and effort on an issue which is rendered moot by the ruling of a higher court. Id.

This court has found that the proper procedure to be employed by the trial court, when a petitioner seeks both a delayed appeal and additional post-conviction relief, is "to grant the delayed appeal, when warranted, and to dismiss the collateral attack upon the conviction without prejudice." Id. at 50; see also Cameron v. State, No. M1998-00005-CCA-R3-CD, 2000 WL 1209450, at *2 (Tenn. Crim. App. at Nashville, August 18, 2000). Such a procedure would permit a petitioner to pursue post-conviction relief after the completion of delayed appellate review. Id. The statute of limitations on the filing of the petitioner's petition for post-conviction relief will not begin to run until a final judgment on the petitioner's delayed appeal is entered. See Cole, 1998 WL 240336, at *2. Furthermore, this court acknowledges that Tenn. Code Ann. § 40-30-202(c)(1997) intends that only one petition for post-conviction relief be filed as the result of a single judgement; therefore, if a petition has been decided on its merits, then a subsequent petition should be dismissed. Gibson, 7 S.W.3d at 50. Accordingly, "those petitions not resolved 'on their merits' are not subject to dismissal." Id. However, because the post-conviction court incorrectly proceeded to hear the post-conviction petition on the effectiveness of trial counsel, we have elected to address both of the petitioner's claims in turn. Id.

A. Sufficiency of the Evidence

On delayed appeal, the petitioner challenges the sufficiency of the evidence used to support his convictions for two counts of evading arrest and two counts of driving on a revoked license. In Tennessee, a jury conviction removes the presumption of the petitioner's innocence and, on appeal, replaces it with a presumption of the petitioner's guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Accordingly, the petitioner carries the burden of demonstrating to this court why the evidence adduced at trial will not support his conviction. Id. Furthermore, the petitioner must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). Moreover, a verdict of guilt, determined by a jury and approved by the trial court, accredits the State's evidence and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning witness credibility and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). As a result, this court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the trier of fact. Cabbage, 571 S.W.2d at 836.

To justify convicting the petitioner of driving on a revoked license, the State must prove that the petitioner drove a motor vehicle on a public road in Tennessee while the petitioner's privilege to drive was revoked. Tenn. Code Ann. § 55-50-504(a)(1)(1998). In order to sustain the petitioner's conviction for evading arrest, the State must establish that the petitioner, while operating a motor vehicle on a road in Tennessee, intentionally fled or attempted to elude a law enforcement officer after having received any signal from the officer to bring the vehicle to a stop. Tenn. Code Ann. § 39-16-603(b)(1)(1997).

Proof presented at trial established that the driver of the motorcycle was operating a motor vehicle on a road in Tennessee on June 16th and June 22nd. Additionally, there is little dispute in the record that, at the time of the offenses, the petitioner's driver's license had been revoked. Moreover, there is ample evidence to show that the driver of the motorcycle fled from or attempted to elude Officer Ellis after the officer indicated with his blue lights for the individual to stop. The petitioner's sole contention is that the evidence produced by the State was insufficient to establish his identity as the driver of the motorcycle on these two occasions.

The evidence produced by the State at trial to establish the petitioner's guilt was entirely circumstantial. When the evidence used to prove guilt is wholly circumstantial, the evidence

> 'must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt' and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the petitioner] is the one who committed the crime.

State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987)(quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).  Moreover, the jury, as the finder of fact, must determine the weight to be given to the circumstantial evidence.  Price v. State, 589 S.W.2d 929, 931 (Tenn. Crim. App. 1979).

Officer Ellis testified that, on June 26, 1996, after being called by Officer Bales, he approached the petitioner in the parking lot of Hawk's Pool Hall.  Officer Ellis maintained that he recognized the motorcycle the petitioner was working on as being the one he pursued on June 16th and June 22nd.  Furthermore, Officer Ellis indicated that the color and make of the motorcycle and the bent left tail light were the same as the motorcycle driven by the perpetrator.  In fact, the petitioner never contended that the motorcycle he was working on the day he was arrested was not the motorcycle that twice eluded the police.

Officer Ellis further testified that the helmet that was on or near the motorcycle was the same style of helmet that he had seen on the previous two occasions.  Officer Ellis asserted that, although on the day of the petitioner's arrest the helmet was spray painted white, he could nevertheless discern an outline beneath the paint that suggested that the helmet had once had stripes like those on the helmet worn by the perpetrator.  Additionally, Officer Ellis averred that the petitioner had the same size, build, and hair as the perpetrator of the June 16th and June 22nd offenses.

The strongest evidence the State produced against the petitioner, especially for the June 22nd offense, was the tattoos on his back.  The petitioner argues that, because Kitts had testified that he had a similar "ultimate act of defiance" tattoo on his back and Kitts also admitted that he had access to the motorcycle at the end of June, Kitts could easily be the perpetrator of the offenses.  However, Officer Ellis repeatedly testified that the driver of the motorcycle on June 22nd had three tattoos, one on the right shoulder, one in the center of his back, and one on the left side of his lower back.  It was proven that, while Kitts has the center and lower left tattoos, he does not have a third tattoo on his right shoulder.  However, photos introduced at trial showed that the petitioner does have three tattoos in the same locations as the perpetrator.

Moreover, Officer Ellis testified that, on June 26th, the petitioner was similarly dressed to the perpetrator of the June 22nd incident.  The petitioner wore the same type of shorts and sandals as the driver of the motorcycle, and there was a similar canister of pepper spray attached to his belt.  Furthermore, Kitts testified that he does not carry pepper spray.  Together with the description of the same body type, same hair and same tattoos, this evidence is more than sufficient to support the convictions.

Although there is less evidence to tie the petitioner to the June 16th incident, there is nevertheless sufficient evidence to uphold the petitioner's convictions. Officer Ellis testified that on June 16th, a perpetrator wearing a striped helmet, with the same hair and body type of the petitioner, was driving a white motorcycle with a bent tail light.  The petitioner argues that Kitts could have been the driver on June 16th.  However, Kitts testified that he drove the motorcycle at

the end of June, but he could not remember specific dates or times. Moreover, Seals testified that Kitts drove the motorcycle on the 22nd and borrowed the motorcycle another time, but he could not identify the date as June 16th. Furthermore, Kitts testified at trial that he never evaded the police when he was driving the motorcycle.

Additionally, the petitioner was in possession of the motorcycle on the day he was arrested, and had access to the motorcycle during the entire month of June. Also, testimony at trial indicated that the motorcycle had belonged to the petitioner and was owned by the petitioner's brother at the time of the offenses. The petitioner has failed to show why the evidence preponderates against the jury's verdict.

### B. Ineffective Assistance of Trial Counsel

This court reviews claims of ineffective assistance of counsel, a mixed question of law and fact, de novo. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). To prove a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner by creating a reasonable probability that the result of the trial is unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to determine whether or not counsel's performance was deficient, this court must decide whether counsel's performance was within the range of competence required of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

The petitioner alleges that his trial counsel was ineffective in several different respects. First, the petitioner claims that his trial counsel never tried to introduce into evidence at trial the helmet that was with the motorcycle the petitioner was repairing when he was arrested. The petitioner gave his trial counsel, at some point prior to trial, a spray painted helmet the petitioner contends was with him when he was arrested. The petitioner argues that, because the spray painted helmet did not match the striped helmet worn by the perpetrator, introduction of the helmet into evidence would have "negated an essential factor of the State's identification of the [petitioner] as the perpetrator of the crimes for which he was convicted."

The petitioner's trial counsel admitted that the spray painted helmet presented at the post-conviction hearing did not match Officer Ellis' description of the striped helmet worn by the perpetrator. However, Officer Ellis testified at trial that the helmet that was with the petitioner when he was arrested was spray painted white, but underneath he saw an outline that indicated that the helmet once had a stripe similar to the perpetrator's helmet. Furthermore, Officer Ellis could not identify the spray painted helmet the petitioner presented at the post-conviction hearing as the one that was in the petitioner's possession the day he was arrested. Trial counsel testified at the post-conviction hearing that he did not introduce the helmet at trial because it would have been difficult to identify the helmet without the petitioner's testimony and the petitioner did not testify. Not introducing the helmet at trial was a tactical decision made by the petitioner's trial counsel. As this court has previously stated, "We should defer to trial strategy or tactical choices if they are informed

ones based upon adequate preparation." Owens v. State, 13 S.W.3d 742, 749 (Tenn. Crim. App. 1999).

Secondly, the petitioner contends that his trial counsel should have introduced "drive-out" tags, or temporary tags, which would demonstrate that Seals was the owner of the motorcycle during the month of June. The petitioner asserts that, because Seals testified that he had not allowed the petitioner to drive the motorcycle after his purchase of the motorcycle, evidence of Seals' ownership would weaken the State's identification of the petitioner as the perpetrator at trial. Additionally, the petitioner alleges that his trial counsel never questioned Seals as to why the petitioner was in possession of the motorcycle when he was arrested.

However, the State did not have to prove that the petitioner owned the motorcycle as an element of the offenses with which the petitioner was charged. Tenn. Code Ann. §§ 55-55-504(a)(1), 39-16-603(b)(1). Moreover, trial counsel did question Seals about why the petitioner was in possession of the motorcycle when he was arrested. Seals testified that the motorcycle quit running while someone named Phillip was test driving it. Subsequently, the petitioner's trial counsel asked, "Who did you send after the motorcycle?" Seals replied, "I sent my brother, [the petitioner]." Furthermore, trial counsel repeatedly asked Seals to confirm his ownership of the motorcycle at the time of the offenses. As a result, evidence about the drive-out tags would have been cumulative and would not have added anything to the petitioner's defense. See State v. Melson, 772 S.W.2d 417, 421 (Tenn. 1989).

Moreover, during a lengthy discussion at trial about the tags that were on the motorcycle, Seals never mentioned that he possessed drive-out tags for the motorcycle. However, Seals did testify at trial that, "There was an old tag on the motorcycle when I bought it from Jimmy Goans." Additionally, Seals testified that he moved tags to the Suzuki motorcycle from other motorcycles he owned. Furthermore, there was evidence introduced at trial that the tags that were on the motorcycle when the petitioner was arrested were registered to the petitioner. The petitioner's use of conflicting evidence would have damaged the credibility of his witnesses at trial. Even if trial counsel was deficient in failing to question Seals about the drive-out tags, the petitioner has failed to show why trial counsel's failure to mention the drive-out tags would be prejudicial to his case.

Next, the petitioner maintains that his trial counsel knew of an expert in tattoo artistry, Hawk Matthews, who would have testified at trial that the eagle tattoo on the back of the perpetrator shown in the police video was not the same as the eagle tattoo on the back of the petitioner. However, the petitioner's trial counsel testified at the post-conviction hearing that he did not call Matthews as a witness because he was afraid that, on cross-examination, Matthews would be compelled to testify about the other tattoos on the perpetrator that matched those of the petitioner. Trial counsel's decision not to call Matthews to the stand at trial was strategic. As we stated earlier, this court will defer to the informed trial strategy of counsel. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996)(citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). This issue is without merit.

Finally, the petitioner avers that his trial counsel was ineffective in failing to call Jimmy and Michael Dickerson as alibi witnesses. The petitioner claims that the Dickersons would have testified that he was helping them bury Michael Dickerson's dog on June 22,1996. However, trial counsel testified at he post-conviction hearing that he did not call the Dickersons as defense witnesses for two reasons. First, Michael Dickerson had an extensive criminal record that the State could have used to impeach his credibility as a witness. Trial counsel believed that having Michael Dickerson on the stand could have hurt the petitioner more than it could have helped him. Second, the memory of both Dickersons about the dates and times in question was sketchy when trial counsel questioned them about it before trial.

However, the Dickersons testified at the post-conviction hearing that they remembered the date well, even though more than a year had passed since the incident, because Michael Dickerson had marked the day his dog died on the calendar. Yet, the Dickersons were unable to produce this calendar for trial or for the post-conviction hearing. Deciding whether or not to call witnesses is another legitimate exercise of counsel's trial tactics. State v. Martin, 627 S.W.2d 139,141 (Tenn. Crim. App. 1981). An attorney who does not believe that a witness will help the defense, or believes that a witness is not credible, may conclude that the best strategy is to not put that witness on the stand. See Hindman v. State, 672 S.W.2d 223, 224 (Tenn. Crim. App. 1984)(finding no ineffective assistance of counsel where counsel chose not to place unreliable witness on the stand); but see State v. McGee, 605 S.W.2d 840, 841 (Tenn. Crim. App. 1980)(stating that the age and faulty memory of a witness only affected the weight and credibility of her testimony and did not make her incompetent witness). Once again, this court will not use hindsight to second-guess or criticize trial counsel's strategy or tactics. Turner v. State, No. 02C01-9310-CR-00236, 1994 WL 456337, at *2 (Tenn. Crim. App. at Jackson, August 24, 1994). The petitioner's trial counsel was not deficient in failing to call either of the Dickersons to the stand at trial.

### III. Conclusion

Based upon the foregoing, we affirm the post-conviction court's denial of post-conviction relief relative to the ineffective assistance of counsel at trial. We further conclude that there was sufficient evidence to convict the petitioner of two counts of driving on a revoked license and two counts of evading arrest, and we therefore affirm the judgement of the trial court.

_____
NORMA McGEE OGLE, JUDGE